IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTT HARRY,

      **Plaintiff,**

      **v.**                                                      **CASE NO.  22-3186-JWL**

(FNU) HUDSON, Warden,
et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action.  The Court conducted an initial review of the case and directed Plaintiff to show cause why his Complaint should not be dismissed.  (*See* Memorandum and Order to Show Cause, Doc. 4) ("MOSC").  Plaintiff filed an Amended Complaint (Doc. 5).  The Court screened the Amended Complaint and issued a second MOSC ("MOSCII", Doc. 7).  Before the Court for screening is Plaintiff's Second Amended Complaint (Doc. 8).  Plaintiff also filed a supplement to the Second Amended Complaint (Doc. 9).  For the reasons explained below, the Court finds that Plaintiff still has not stated an actionable claim for violation of his constitutional rights and dismisses this action.

## I.  Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Although Plaintiff is currently incarcerated at FCI-Edgefield in Edgefield, South Carolina, the events giving rise to his Complaint occurred during his detention at USP-Leavenworth in Leavenworth, Kansas.  The Court granted Plaintiff leave to proceed *in forma pauperis*.

Plaintiff alleges that medical care he received at USP-Leavenworth was constitutionally inadequate.  Dr. Robert Kenney, an outside surgeon, performed surgery on Plaintiff on January 21, 2020, attempting to laparoscopically repair a left lower abdominal inguinal hernia.

Plaintiff alleges that more than two years after the surgery, he still has blood in his urine and a large lump in his testicular sack, and he can feel the mesh used by Dr. Kenney moving, which causes him severe pain.

Plaintiff alleges that the hernia kept growing and he was in pain as a result of delayed surgery.  He further claims the defendants were negligent in their decision to use defective mesh to attempt to repair the hernia.

Plaintiff names as defendants Donald Hudson, Warden of USP-Leavenworth, and Dr. Kristine Aulepp, Medical Director at USP-Leavenworth.  Plaintiff seeks compensation for pain, suffering, and emotional distress and immediate surgery.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

To state a *Bivens* claim, a plaintiff must allege the violation of a constitutional right by a federal officer acting under color of federal authority.  *Bivens*, 403 U.S. at 389.  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir.

Case 5:22-cv-03186-JWL   Document 10   Filed 02/17/23   Page 3 of 9

2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  Discussion

Plaintiff states that "all previous filings are incorporated by reference as supplements to this complaint."  Doc. 8, at 2.  He also filed a supplement to this Second Amended Complaint.  As explained in both the MOSC and the MOSCII, an amended complaint is not simply an addendum to the previous complaint, and instead completely supersedes it.  It follows that Plaintiff *may not simply refer to an earlier pleading*, and *the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action*, including those to be retained from the original complaint or the first amended complaint.  Any claims or allegations not included in the Second Amended Complaint are no longer before the Court.

After reviewing Plaintiff's Second Amended Complaint, the Court finds that this matter is subject to dismissal for the following reasons.

### A.  Failure to State a Claim against Warden Hudson

The MOSCII found that Plaintiff had failed to show that Warden Hudson directly and personally participated in any constitutional violation and failed to assert a basis for supervisory liability.

To establish *Bivens* liability, a plaintiff "must provide evidence that an individual directly and personally participated in the purported constitutional violation."  *Watson v. Hollingsworth*, 741 F. App'x 545, 551 (10th Cir. 2018) (unpublished) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1225, 1226 (10th Cir. 2013)). "Government officials may not be held liable for the unconstitutional

4

conduct of their subordinates under a theory of *respondeat superior*." *Id.* (quoting *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937).  To prevail on a theory of supervisory liability, a plaintiff must show: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the constitutional deprivation." *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010)).

Plaintiff continues to name Hudson as a defendant in the Second Amended Complaint but does not allege that Hudson created or implemented a *policy* that caused Plaintiff's harm or that Hudson *knew* of and disregarded an excessive risk to Plaintiff's health or safety.  Plaintiff fails to state a claim against Hudson.

### B.  Failure to State a Claim under the Eighth Amendment

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments.  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).  In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

An inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind."  *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been *negligent* in diagnosing or treating a medical condition *does not state a valid claim* of medical mistreatment under the Eighth Amendment. *Medical malpractice does not become a constitutional violation merely because the victim is a prisoner*.

*Estelle*, 429 U.S. at 105–106 (footnote omitted) (emphasis added).

The records attached to the Second Amended Complaint show the following:

On 6/8/19, while at a facility designated "OKL," Plaintiff saw a nurse.  He complained of pain from his right lower back down the right side (his hernia is on the left side) and a weak stream when he urinated.  He said the pain had started about 20 minutes before.  The doctor was contacted.  He was given an injection of Ketorolac and a hernia aid.

On 6/9/19, Plaintiff again saw a nurse for complaints of severe pain on his right side.  He said the shot helped for a few hours.  The nurse collected a urine sample, and the doctor ordered pain medication.

On 6/28/19, while at Leavenworth, Plaintiff saw Dr. Clark for a chronic are evaluation.  Diabetes is noted, as is psoriasis, kidney stones, and a left inguinal hernia.  The record states that Plaintiff was passing some kidney stones and had pain "all the time now from this."  The record also noted that Plaintiff wanted the hernia to be repaired.

On 7/12/19, Plaintiff saw a physician's assistant at Leavenworth.  The hernia is noted as "moderate in size" and painful.  Plaintiff's psoriasis is also mentioned.

On 8/16/19, Plaintiff again saw a PA at Leavenworth.  Plaintiff reported that the hernia belt provided to him was not helping.  The PA informed him that a general surgery initial consultation had been approved and was pending scheduling.  Plaintiff also complained of psoriasis and requested wide shoes.  An examination revealed no abdominal guarding and no issues with sitting, standing, or walking.

On 1/21/20, Plaintiff had surgery to repair the hernia.

On 2/3/20, Plaintiff again saw the PA at Leavenworth for a post-operative evaluation.  Plaintiff was concerned the hernia was still present and a testicular bulge was increasing.  He did not complain of pain.  The PA requested a surgical re-evaluation.

On 6/8/20, Plaintiff saw Dr. Clark at Leavenworth.  He complained of a skin infection on his thigh, difficulty directing his urine stream, urgency, and a knot on the side opposite the hernia

repair.  No complaints of pain related to the hernia were noted.  Dr. Clark prescribed antibiotics.

On 6/16/20, Plaintiff saw Dr. Clark for a chronic care evaluation.  He complained of some pain in left leg related to the hernia repair.  He also complained of gout.  The report is missing pages.

On 6/17/20, Plaintiff saw the PA for complaints about the skin sore/knot on his left thigh. No complaints of pain from the hernia were noted.  The PA renewed his antibiotic prescription.

Plaintiff asserts that the defendants were indifferent to his pain.  It is not clear if he is referring to pain before or after the surgery.  In any event, the records he attached do not support his contention.  They show that he was transferred to USP-Leavenworth in June of 2019, the hernia was present, he had pain from kidney stones and some pain from the hernia, a surgery consult was approved within two months, and he ultimately had surgery in January of 2020.  He then had at least four (4) medical visits before he was transferred to FCI-Edgefield, apparently in the summer of 2020.  The records show that he reported some pain from the hernia, and the medical providers attempted to address it.  Plaintiff's Second Amended Complaint does not show that either defendant knew of and disregarded an excessive risk to Plaintiff's health or safety.  The medical records do not support a claim of deliberate indifference.

Moreover, Plaintiff repeatedly refers to the negligence of the defendants.  Negligent conduct, even medical malpractice, does not rise to the level of a constitutional violation.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105–106.

The supplement (Doc. 9) to the Second Amended Complaint, even if considered part of the Second Amended Complaint, does not help Plaintiff state a claim.  It makes the allegation that the hernia has still not been addressed, but it does not explain how defendants at USP-Leavenworth

are responsible for Plaintiff's care after he was transferred, apparently in the summer of 2020. Furthermore, the supplement continues to attempt to blame Dr. Kenney, the surgeon, but he is not named as a defendant in the Second Amended Complaint and cannot be a proper defendant to this *Bivens* action.  To state a *Bivens* claim, a plaintiff must allege the violation of a constitutional right by a federal officer acting under color of federal authority.  According to Plaintiff, Dr. Kenney is a private doctor not employed by the federal government.  Plaintiff's allegations that Dr. Kenney was negligent in using surgical mesh to attempt to repair the hernia are more properly raised in a malpractice action filed in state court.

## IV.  Conclusion

For the reasons stated herein, the Court finds that the Second Amended Complaint fails to state a claim upon which relief may be granted and is therefore dismissed.

**IT IS THEREFORE ORDERED** that this action is **dismissed** for failure to state a claim upon which relief may be granted.

**IT IS SO ORDERED**.

**Dated February 17, 2023, in Kansas City, Kansas.**

**S/   John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**